Good morning, Your Honors. I'm Jeff Gatkin from the Cooley Firm, appearing for Appellant Tile and Life 360. I'd also like to reserve probably four or five minutes of my time for rebuttal. Always somewhat aspirational. Yeah. Just going to set myself a timer just in case. Well, we would submit there are several bases on which the court should reverse the district court's ruling, in part denying the motion to compel arbitration. I just want to briefly start with the October of 2023 terms of service, which expressly delegated the decision, any dispute about arbitrability, to the arbitrator. Again, I'll just discuss this briefly, but Tile sent a short, clear email informing all users that it was updating its terms. You're relying on inquiry notice, right? That's correct. Because the plaintiffs didn't see it. I think one went into the junk box and the other one didn't see it. Yeah. Well, what I would note, Your Honor, is obviously there's evidence that we sent it. We know that Ms. Broad received it. And as to Ms. Doe, she only says that she didn't review it, hasn't reviewed it. Of course, had I would guess, knowing the diligence of my opposing counsel, that there was a review of her email box to see if she had received it, and had she not received it, I think there would be evidence saying I performed a search. So let's assume they did receive it. Yes. Do you have a case that mass email under these circumstances are sufficient to put a reasonable person on inquiry notice? I get thousands of junk email. And I have to confess, I don't often check my junk email box. It's just the volume in today's world, especially people with multiple email addresses, which many of us have, it's just simply overwhelming. So what's your best case for that proposition? That would be, I'm not sure if I'll pronounce it correctly, but Gaza Zeta versus Coursera is the best case. That's Judge Davila here in the Northern District ruling that where there is an email that provides conspicuous notice of an update to terms, in that case, unlike what my opposing counsel asserted in their answering brief, in that case, the plaintiff said that they never saw or recalled receiving the email. And yet Judge Davila said the combination of a set of terms that says we may update our terms, and if you continue to use our service, you're bound, plus a very conspicuous, clear email saying we're updating our terms, plus continued use equals being bound to the new terms. And I would also add the Saidi versus Microsoft case, which is another instance where there was an email saying we're updating our terms, and a plaintiff who claimed not to have seen it. But in both cases, they were bound. I'm sorry, were you going to? Go ahead. So counsel, am I correct that we have to make a call on which terms and conditions are binding? Because even if we were to disagree with the district court on the supposed ambiguity, the latest terms and conditions are jams, and the prior ones are AAA, and so there's no way to avoid making a call, right? I suppose that's right, Your Honor, and we began our brief with the discussion of the October 2023 terms because we do feel as though they were on inquiry notice and there continued use bind them to those terms. But this is sort of a waterfall. If Your Honors conclude they're not bound to those terms, then we move on to the terms that they concede they agreed to, which also included an arbitration provision. And then we would just simply need to decide if we agreed with your friends that October 2023 isn't the right terms to look at, then we have to decide whether the district court was correct as to the disqualifying ambiguity. That's correct, Your Honor. So getting to that next level of the waterfall, if you will, if we think the October 2023 terms don't apply, then how do you reconcile the conflict here without reading out certain words? The venue clause has an exclusivity reference, right? The exclusive jurisdiction shall be in the state and federal courts located in ND Cal. It also has the all-encompassing, which we interpret broadly, all disputes and claims and controversies arising out of relating to these terms. That, to me, to be completely inconsistent with the incorporation of the AAA rules and the delegation of the arbitrability question to the arbitrator. So I would say there are two errors in the district court's ruling. One relates to whether there's an ambiguity or it was a clear and unmistakable delegation. The other relates to this concept. Well, let's assume that it is a clear and unmistakable delegation and that it's exclusive. Let's give you that and say, okay, well, the incorporation under our case law, Brendan, the incorporation of the AAA rules is an indication of a clear and unmistakable delegation. So you've got that. But on the other hand, you have a provision that says the exclusive jurisdiction is in the state and federal courts in Northern California. And that applies to all claims and disputes arising out of these terms. And how do you reconcile that without reading out words from the venue provision? So I would point, Your Honor, to the Mohammed v. Uber Technologies Ninth Circuit decision because that has the same conflict. And nonetheless, the Ninth Circuit ruled that there is no ambiguity because, as stated in the Dream Theater case, in every instance there are going to be cases that have to go to court. The tile terms expressly have carve-outs for copyright, trademark, and patent cases. So there's no question that there could be some disputes that have to go to court. So under Uber v. Mohammed, in that situation, despite a reference, an exclusive jurisdiction provision just like this one, the court said that plainly applies to non-arbitrable disputes. Now, the district court, what it did is latched onto what I would describe as a distinction without a difference between the tile terms and the Mohammed terms, which is that the tile terms said it kind of provided a list of the different kinds of disputes over which the court would have exclusive jurisdiction. After saying all claims and disputes, it said, and that also covers disputes about breach and termination and enforcement and interpretation and validity. And the district court said, aha, those, that list, what I would describe as a belt and suspenders list of the kinds of claims that are covered, makes this totally different than Uber, Mohammed v. Uber, where the arbitration agreement is unenforceable, dot, dot, dot. Sotomayor, the district court did tackle with Mohammed and found that the distinction is that under the Mohammed venue provision, it did not reserve the questions of the interpretation of the arbitration to the courts. And here it does. What do you make of that distinction? It does. Respectfully to her honor in the district court, this does not reserve interpretation or validity of the arbitration provision to the courts. It just references interpretation and validity in a list of the kinds of claims that may arise. But the arbitration provision is completely separate. Indeed, the title of the provision on which the district court relied is general provisions. There's no question, your honors, this is sort of a boilerplate venue provision that governs. The supposed ambiguity on ER 116 general provisions and the arbitration provision on the next page says, as a heading, claims covered by arbitration. Yes, your honor. And if we were to credit this ambiguity, basically we would be reading out the entire provision of claims covered by arbitration. Well, there would be many ways in which it's a completely countertextual result. It would be reading out that the claims covered by arbitration, it would be ignoring the delegation to AAA and finding an ambiguity under the very same circumstances where the Muhammad v. Uber decision said the ambiguity was artificial and reversed the district court on that basis. And then when the court went on to reach whether the claims were covered, there was also reading out of various provisions, including the provision that just simply says, you're going to arbitrate any dispute about tile products. That also has to get read out of the agreement in order to reach the conclusion the district court reached. Yeah, I think the difficulty is that going one way reads out certain provisions in one venue provision, going the other way reads out certain language as to the delegation. But continuing on with the waterfall analogy, if we decide that there is ambiguity, then we have to reach the question of unconscionability. Yes. Just to respond briefly to what you said, Judge Nguyen, I do not think you have to read anything out of the general provisions term on exclusive jurisdiction because interpretation and validity, they can come up in a dispute over trademark, copyright, patent. These are all expressly excluded from the reach of the arbitration provision. So you can fully harmoniously apply the general provisions venue clause and severability clause and the arbitration agreement. So that would be my response to that. Counsel, in doing that, we're required to apply Civil Code 1641, right? Forgive me, Your Honor. I'm off the top of my head. 1641, is that you must read all provisions of a contract to have meaning? Yes. I'm going to ask your friend this, too. The whole of a contract is to be taken together so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other. Yes, Your Honor. So in our view, the Court's interpretation created a conflict, created an ambiguity, so that she could say, well, it's ambiguous and it's for me to decide. But I think, frankly, that was because there was a resistance to, given the sensitive nature of this case and the serious harms that allegedly befell the plaintiffs, I think there was a resistance to allowing this to go to arbitration. But there is no ambiguity. This contract can be read exactly as is because there are arbitrable claims and there are non-arbitrable claims. And just like Mohammed v. Uber Technologies, the venue provision covers the non-arbitrable claims and the arbitration clause can be read as it is. I see I only have three minutes left, but, Your Honor, I don't want to ignore your question about what if we reach the last layer of the waterfall. Should I address that or repeat it? Yes, please do. And I'm sorry I interrupted. Oh, no, not at all. I mean, I think that the short answer to this, so I can reserve some of my time, is that this is not a case where we're talking about something occurring that's wildly outside of the plain text of the provision. These people, there were two plaintiffs in the case, the Ireland Gordies, who are not tile customers. And there was no motion to compel us to them. We litigated their cases in the district court and those cases are now resolved. But these are two people who acquired tiles, one buying it directly, the other getting it and using it as part of a promotion for a different product. They acquired tiles. They had agreed to the terms of service. The terms say any dispute between you and tile about tile products, you're agreeing to arbitrate. There's nothing surprising or unfair about that. This is not a situation where they're claiming product defects. Sotomayor, I think you're reaching out to third-party conduct. I think that's the part where the district court split off. So I don't see how a product defect claim about the actual tile, the actual product that these people acquired, really is surprising or hidden in prolix or otherwise procedurally unconscionable. I don't think it's substantively unconscionable. But there's also the point that we made, that it is very difficult to disentangle the supposedly arbitrable and non-arbitrable claims. And that's because for Ms. Broad, one, she found two tiles allegedly hidden in her car. One of them is the tile she bought. So what exactly is this going to look like? Is there going to be an arbitration hearing about, well, was her location determined by the tile she bought that she signed up for and she gave her alleged stalker access to her account? And a separate trial about the one that she asserts she didn't buy? Like, that's difficult to disentangle. And the complaint is also full of accusations about how the reason that the tile is defectively designed is because you can't do things like precisely locate it using the Scan and Secure app. You can't cause it to emit a sound so it's easier to find. You can't use the Scan and Secure app to disable it. These are all actually claims that the app that the plaintiffs are using to try to protect themselves is defective. And any claim that the app that they signed up for in the terms of service is unsafe, we have an absolute right to arbitrate that. So the court has really drawn an unworkable line between these, like, trial claims and these arbitrable claims. I understand your argument. I don't want to take up all of your time, Bill. I'll give you a couple of minutes back. Thank you. Good morning, Your Honors. May it please the court. I'm happy to address any of the questions that Your Honors asked of my colleague or I can immediately begin addressing the points as I see them, whichever your preference. All right. Why don't we start with the waterfall? Super. And the inquiry notice question. Absolutely. Because if the appellant's view prevails, then that ends the analysis, right, at the inquiry notice stage? I believe so. The October 23rd terms very clearly delegate arbitrability, unlike my position, the previous terms. However, you know, the district court found that Tile had failed to meet its evidentiary burden, showing that plaintiffs had, in fact, received the October 20, 23rd email. And so I believe that that, you know, was not clear ever. Well, I'm not sure that the burden of proof. I know there were some discussions about that. I don't know under these facts that it really makes a difference. The email was sent. Right. Right? And whether it went to the junk box or whether it got lost in the, you know, giant shuffle of multiple emails coming in. Somebody signs up for service. Certainly. The terms get updated periodically by email. People know that. I mean, whether they check it or not is another question. And the mass emails were sent out. So I appreciate that. Tell me why it's not enough for inquiry notice. I think that there is an assumption in there that is not on the record and that Tile has not proven. And that has been an important distinction in other cases, which is that Tile has averred that an email was sent. But whether or not it was sent to our people was not something apart from the spamful. The spam receipt from Plaintiff Broad is not something that's in the record. And, you know, setting aside Broad, there is no evidence. But the spam receipt is not in the record? Well, no, no, no. The spam receipt is in the record. I'm sorry. But setting aside the — setting aside Plaintiff Broad's receiving the email in the spam inbox, Plaintiff Doe, there is not necessarily evidence or at least evidence to, I would say, chin the bar to confirm that, in fact, she received it. We know that a mass email went out. We don't know that it went out to her email address. And this is important because if you look at a case like Jackson, this Court's opinion, there was no evidence that plaintiffs received a mass email from Amazon with updated terms that were sent to the plaintiffs. And that was a critical point for this Court. Following that, there's the Sellers v. Bleacher Report opinion where the defendant, like the defendant, Tyle, here, had failed to provide any indication that there was a recipient in the to field of the email. So it is evident that an email was sent to Broad and it went into her spam folder. But there is no further evidence that I would believe is sufficient under Jackson and its — and its progeny in the Northern District of California to suggest that — that there's proof of receipt by Plaintiff Doe. So that — that is an important point. But I would — I would also submit that, you know, inquiry notice then — I guess this sort of moves into maybe a subpart of the waterfall. Inquiry notice also needs to be conceived of in the context of Tyle's underlying terms, which say that they may update the terms from time to time, but those updated terms, they don't specify how, first of all. But then they say that the updated terms will not take effect absent express consent. Now, they don't define what express consent is, but I think that it's relatively weak tea to think that the indicia that are in the record exhibited by both Doe and Broad chin the bar for being express consent for the updated terms. So, Counsel, keeping with the waterfall analogy — Yes. — let me move downstream a little bit. Yes, Your Honor. So here is my biggest problem with your argument as to the January 21 and the February 23, that I think Civil Code 1641, 150 years old, is binding. And I don't see how looking at the district court's analysis, that comports with taking this ambiguity reads out of the contracts language that says, for example, in the January 2021, all disputes, claims, or controversies shall be determined exclusively by binding arbitration. It seems like, to me, your friend's reconciliation argument works, although imperfectly. But 1641 tells us they have to all be given effect if reasonably practicable each clause helping to interpret the other. And so this is not exactly the common law. So it seems to me that your friend's analysis is reasonably practical, practicable with each clause, helping to interpret the other. Why am I wrong? Well, Your Honor, I think it's important to look at the precise language. So the claims covered by arbitration and the agreements are all disputes, claims, or controversies arising out of or relating to this agreement. Any tile product or service and its marketing, so it has to be the marketing conjunctively with the tile product or service, or the relationship between you and tile disputes shall be determined exclusively by binding arbitration. Absent from that clause is the language that we see in Muhammad, for example. And let's see here. I apologize. My notes are a little scattered. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this arbitration provision, including the enforceability, revocability, or validity of the arbitration provision. But even if we were to say that we're arguable, if this provision isn't read out and if we were to agree with your friend that sophistication doesn't matter, wouldn't that go to the arbitrator? I do not believe it would, Your Honor.  Well, because I believe that disputes within the scope of the arbitration provision go to arbitration. It is certainly not — it is not clear that whether the arbitration agreement — whether a contract to arbitrate delegability — or enforceability is within that scope. And then you have more specific language a little bit further down that says the exclusive jurisdiction for all disputes, claims, or controversies arising out of or relating to these terms will be — will be, you know, the forum for those is the Northern District of California. So it's very clear to determine whether or not an agreement to arbitrate was ever entered into when goes to the court, which is where there's a Federal presumption, right? Like threshold issues of delegability — or rather arbitrability — are presumed to be the province of courts. So that's not, you know, hostile to arbitration. But then if there is then found to be an agreement to arbitrate specific claims, off to JAMS or off to AAA it goes. I genuinely believe that there is not an irreconcilable tension there. And, you know, this sets aside, too, the additional carve-outs that my colleague discussed before about IP infringement, things of those natures. This does not displace an agreement to arbitrate arbitrable claims. And arbitrable claims are what are the subject of this Provision A that says claims covered by arbitration. Indeed, the title says claims, not issues relating to arbitration. So I think that if you look at the very specific language of the two provisions, they're harmonious. They do not preclude arbitration of the parties' agreement. They don't do violence to the parties' agreement. They simply say that if there is a dispute about whether or not an arbitration agreement encompasses a specific claim, it must be resolved by a court. And then based upon that resolution, you either go to arbitration or you stay in court. Much like what happened here. Yeah, the problem with your argument is Brennan, right? Because it has the incorporation of the Triple A rules. That is a clear and unmistakable indication that the arbitrability question is going to be determined by the arbitrator. So for me, the difficulty really isn't the section about all disputes shall be determined by arbitration. It's the fact of the incorporation. Now, who gets to decide the threshold question of arbitrability? Now, the district court reconciled that by saying that it's different from Muhammad because of the interpretation and validity thereof. What do you make of your opposing counsel's response? That really is a distinction without a difference. I would disagree with my very excellent opposing counsel on this. We must agree to disagree. I think the thing with Brennan and similarly with Flylow is that they simply contemplated the incorporation of the Triple A rules without anything more. So if I sit down this morning and order breakfast and say I would like eggs, then it is clear and unmistakable evidence that I would like eggs. But if I then say, but if the kitchen is making eggs benedict, I would like that instead, it ceases to become clear and unmistakable evidence. The incorporation of the venue provision, which was not at issue in Brennan and which was not a fact in the record or part of the court's analysis in Brennan, much like, or Flylow, I believe, and I believe Your Honor wrote that opinion, so I'm not going to pontificate too much on it, but I believe that in those instances a sort of counterpuntal venue provision was simply not contemplated. And I think the addition of the venue provision creates, I don't want to say an ambiguity, I think it's very, very clear, obviously it's my position, but it, Brennan is a shorthand for in a vacuum. If you incorporate Triple A rules or if you incorporate an arbitral forum's rules, the likelihood is great that that is clear and unmistakable evidence of an intent to arbitrate. If, however, there are other terms within the contract, much like Your Honor directed us, we must read the entirety of the contract to harmonize it. And that is the object here, and this is what distinguishes this matter from Brennan, from Flylow, and those progeny. So before you run out of time, can I have you address the unconscionability question, because that's the next level. Of course, the final level of the waterfall. The district court got it perfectly right. The district court split, you know, in its unconscionability analysis, claims that arise. What about the unworkability issues? Excuse me. Sorry, Your Honor. What about the unworkability issues? I entirely disagree with my colleague on the other side. It's quite workable to the extent that, I mean, what we are ultimately saying is that Tile negligently designed and introduced into the stream of commerce a product which it knew third parties would use to stalk and hunt human beings. Those third parties would purchase their own tiles and use their own tiles to do this thing. I wish it were different that, you know, this one, you know, Plaintiff Broad's in one instance, Plaintiff Broad's own tile was used. I think that the court probably got it correct on balance and in fairness that that becomes a dispute that she would have vis-a-vis tile. But it cannot be said that an arbitration provision entered into between two parties should be read to also encompass the ultra-virus actions of third parties over whom the plaintiff in this instance has absolutely no control, who has engaged in a commercial interaction with tile that is separate and apart from anything that our plaintiffs have, you know, have contemplated. It just, it broadens the scope of the arbitration provision to the point that shocks the conscience. Am I correct in understanding that the underlying conduct, there's overlap there, but the parties are different. That's what the court split it on, right? Correct. Conduct by third party. And so what troubles me is that the Supreme Court has already said that any ambiguities on scope of arbitration basically solidly falls in favor of arbitration. And here, you're not trying to split completely different claims. They're the same allegations of conduct. It's just you're trying to split parties. Well, no, Your Honor. I would say ultimately, you know, perhaps if the claims involving Plaintiff Broad's tile, certainly we're not splitting parties with Plaintiff Doe, I would submit. But if they are unworkable as to the acts that involved one tile versus the acts that involved another, you know, we actually are splitting claims because the parties are always the same. But, and I don't want to use the claim splitting word, but some claims may have to be arbitrable. That is the nature of the beast. But I would, I believe a cogent, a very cogent analysis of what to do in these situations is the Ciancio v. goodness, I'm blanking, but the Ciancio case where multiple, multiple claims were not arbitrable because they were wholly outside of the scope of the contract, but one or two were. The invasion of privacy claim was arbitrable because there was a provision in the contract that expressly contemplated T-Mobile securing and making safe people's data. I believe that that's sort of, you know, addressing theoretically data breaches, but at the same time the court held that this was within the ambit of the arbitration provision. But the acts of the employee to then go and look up people's records, outside of that, the negligence claims, the criminal arsony claims, things of those natures, those simply weren't arbitrable. So I believe that it is ultimately a sorting of the claims and not a sorting of the parties. And if we have to sort those claims, Judge Lynn is a very, very capable jurist, and I'm confident that she will put us to our proof. That is my time. Judge Gould, do you have any questions before counsel sits down? No questions. Judge Bennett. Thank you. Thank you, Your Honor. Thank you, counsel. Thank you, Your Honors. I'll try to be brief. What I would say is that in many ways this feels to me like it's coming down to the difference between Mohammed v. Uber and the in re Tesla decision. And I would strongly encourage, Your Honors, to look closely at the tile terms and ask which of those two cases is more on point. Because in re Tesla, there is a specific statement in the terms of service that says the court may render unenforceable part of the arbitration provision. That is what makes in re Tesla a different situation. The terms are expressly acknowledging, whether it was intentional or inadvertent, I don't know, but it creates an ambiguity because it expressly says the court may determine that part of the arbitration provision is unenforceable. Now, that is inconsistent with sending the claims to arbitration under the AAA rules and delegating arbitrability disputes to the arbitrator. Tile's terms do not say that. They just say any claims and disputes will be sent to court, and it says that goes for breach, enforcement, termination, interpretation, validity. But that's just like Mohammed. While Mohammed didn't include an enumerated list of the particular kinds of disputes, it was exactly the same thing. Any disputes or claims have to go to court. So I think that is sort of the nub of the decision about whether the AAA delegation was clear and unmistakable. It was under Brennan. Counsel don't even address the GG versus Valve unpublished Ninth Circuit decision that applied the Brennan rule in the context of unsophisticated minors using a video game platform. But I would just ask Your Honors to look closely at that, look at those two decisions, and I believe you'll conclude that Tile is right, that the district court created an ambiguity that, just like they said in Mohammed, was artificial. Just a couple of other quick points. Counsel said we don't know if it was sent to Ms. Doe's e-mail, the notice of the terms. I think you should look at ER 97 for that, because that's the declaration of Mr. Klinker, saying it was sent to all Tile users, including Ms. Broad and Ms. Doe. We haven't even talked about how unworkable it is to say that whether or not somebody recalls or read terms, like that determines whether or not an update applies. That's an unworkable standard that the court should not adopt. Regarding unconscionability, Your Honor, Judge Nguyen is certainly right, that the rule is you have to resolve all doubts in favor of arbitration. And I think that that's probably most of the points that I wanted to make regarding this. But, you know, Judge Bennett asked, you know, if you have to decide which terms apply, I think you could say, you also could rule that, you know, assuming the earlier terms apply, then this is the outcome and these disputes have been delegated to arbitration. So you could reach that without actually concluding. Except the problem with that is that one set has one arbitration forum, the other set has the other arbitration forum. So my problem with assuming without deciding determines, I mean, JAMS and AAA are both excellent services, but they're different. Yeah, I mean, and frankly, it was a very astute question that I hadn't considered, whether you have to resolve it just to decide where it goes. Although we have a good relationship with my colleague, I doubt we would end up, like, having a dispute about which form. I'm sure as a practical matter that would be true, but I still don't see how we can avoid it. Well, what occurred to me is whether or not my client could just stipulate to go to AAA under the earlier terms, but I frankly haven't discussed it with my client, so I'm not in a position to make that representation here and now. But it does seem to me like- If it changes, will you send us something? Oh, yes. Within the next seven days? Absolutely, Your Honors, we could do that. Okay, thank you very much, Counsel. We took you over time. I appreciate both sides' very helpful arguments and the matters submitted.
judges: GOULD, NGUYEN, BENNETT